**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER ANDERSEN,<br>*Plaintiff,*<br>v.<br>PROGRESSIVE ADVANCED INSURANCE COMPANY,<br>*Defendant.* | CIVIL ACTION<br>NO. 26-3816 |

**Pappert, J.** **September 18, 2026**

**MEMORANDUM**

Christopher Andersen was insured under an auto insurance policy issued to his wife, Lyndsay Mercier, by Progressive Advanced Insurance Company. In June 2024, Andersen was involved in an accident while driving a 2004 Ford Ranger, a vehicle belonging to his mother-in-law and not covered under the policy. Andersen sought underinsured motorist coverage pursuant to the policy. After issuing a Reservation of Rights letter and investigating the claim, Progressive denied coverage pursuant to an exclusion, because the 2004 Ford Ranger was available for Andersen's regular use but was not a covered vehicle.

Andersen sued Progressive in the Delaware County Court of Common Pleas alleging breach of contract. The parties eventually settled the claim. Andersen then filed a separate action in the state court alleging bad faith, which Progressive removed to federal court. Progressive filed a motion for summary judgment which the Court now grants.

I

Andersen was covered as one of the "[d]rivers and resident relatives" under his wife's Progressive policy, insuring a 2019 Nissan Rogue. (Policy at 3–4; Dkt. No. 24-1.) The policy included $50,000 in underinsured motorist coverage for each person. (*Id.*) It also contained a "regular use" exclusion that states coverage will not apply for "bodily injury sustained by any person while using or occupying . . . a motor vehicle that is owned by or available for the regular use of you, a relative, or a rated resident. This exclusion does not apply to a covered auto that is insured." (*Id.* at 23.)

On June 19, 2024, Andersen was injured in an accident while driving a 2004 Ford Ranger, a vehicle not listed under the policy. (Progressive's Claim Notes at 2–3; Dkt. No. 24-3.) Andersen did not report the accident to Progressive until July 24, 2024, and in December his lawyer asked Progressive to open a claim. (*Id.* at 2, 35.) Dawn Eberle, the insurer's assigned claims specialist, noted in the claims file that Andersen was driving a vehicle not covered by the policy and that the regular use exclusion might apply. (*Id.* at 35–37.) On December 23, 2024, Eberle sent a detailed Reservation of Rights letter to Andersen's counsel stating that Progressive believed, at that time, that coverage might not be available under the regular use exclusion. (ROR Letter at 2–5; Dkt. No. 24-6.) The letter fully explained the exclusion and that Eberle would need a recorded statement from Andersen on his use of the 2004 Ford Ranger to proceed. (*Id.* at 4.)

On January 30, 2025, Eberle called and emailed counsel attempting to schedule Andersen's recorded statement. (Progressive's Claim Notes at 39–40; Dkt. No.24-3.) Counsel responded that he would "put the case into litigation" and Eberle could then

obtain a statement. (*Id.* at 40.) On March 3, 2025, Eberle sent another Reservation of Rights letter, again requesting a recorded statement from Andersen. Counsel told Eberle he was "getting the complaint together" and Andersen filed his breach of contract action in Delaware County in April 2025. (*Id.* at 41–42.)

II

Federal Rule of Civil Procedure 56 directs a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A plaintiff may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). He "cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint; rather, he must point to concrete evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745–46 (3d Cir. 2005) (per curiam) (citing *Celotex*, 477 U.S. at 322).

III

Pennsylvania's bad faith statute provides for interest, costs, attorneys' fees and punitive damages if the court finds that "the insurer has acted in bad faith toward the insured." 42 Pa. Stat. and Cons. Stat. Ann. § 8371 (West). Courts have defined bad faith as "any frivolous or unfounded refusal to pay proceeds of a policy." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994). There is a two-part test for bad faith claims: "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis." *Smith v. Cont'l Cas. Co.*, 347 F. App'x 812, 815 (3d Cir. 2009) (citations omitted). Both elements must be proven by clear and convincing evidence. *Id.* Even at the summary judgment stage, "the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." *Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (citation omitted).

Andersen's assertions of bad faith pertain to Progressive's alleged conduct in its evaluation and investigation of the claim, as well as in the state court litigation. (Am. Compl. ¶ 34(a)–(i).)

A

Andersen argues that Progressive did not "reasonably investigate" his entitlement to UIM benefits under the policy. (Pl's. Resp. at 6; Dkt. No. 26-1.) The duty of good faith "includes the duty to investigate a claim fairly and objectively." *Emp'rs Mut. Cas. Co. v. Loos*, 476 F. Supp. 2d 478, 495 (W.D. Pa. 2007) (citation

omitted). Courts may find bad faith "when an insurance company makes an inadequate investigation or fails to perform adequate legal research concerning a coverage issue." *Corch Const. Co. v. Assurance Co. of Am.*, No. 1250-C, 2003 WL 23473924, at *516 (Pa. Commw. Ct. 2003). The record evidence shows that not to be the case here.

Progressive opened a claim on Andersen's behalf on December 20, 2024 and Eberle began her review on December 23. (Progressive's Claim Notes at 35; Dkt. No. 24-3.) That same day, she sent a Reservation of Rights letter to Andersen's counsel explaining coverage may be denied under the "regular use" exception, because Andersen was driving a vehicle that was not covered by the policy. (*Id.* at 39.) The letter stated that "[i]n order to investigate the coverage issue" Eberle would "need a recorded statement from Christopher Andersen on the use of the 2004 Ford Ranger." (ROR Letter at 4; Dkt. No. 24-6.) When Eberle called to schedule the recorded statement, counsel refused and told Eberle he would be filing suit and she could obtain Andersen's statement in the course of litigation. (Progressive's Claim Notes at 40; Dkt. No. 24-3.) Eberle followed up in March 2025, sending another Reservation of Rights letter and requesting a recorded statement, but was again told litigation was pending. (*Id.* at 41.) Eberle sent a third Reservation of Rights letter to counsel in June 2025, this time requesting a deposition instead of a recorded statement, since litigation was now ongoing in state court. (*Id.* at 54.)

As part of her investigation, Eberle reviewed medical records, (*id.* at 47, 52), evidence of damage to the vehicle, (*id.* at 63), the police report, (*id.* at 64), title records, (*id.* at 68, 70), Andersen's initial statements to Progressive in July and August of 2024, (Eberle Trans. at 6–7; Dkt. No. 26-2), Andersen's deposition, (*id.* at 11), and Andersen's

responses to Progressive's requests for admissions. (*Id.*) An insurance company need not show that the process used to complete the investigation was flawless, all it must show is it "conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action." *Mann v. UNUM Life Ins. Co. of Am.*, No. CIV.A 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003).

Andersen also contends Progressive failed to communicate with him throughout the investigation, but the record rebuts that assertion. (Pl's. Resp. at 12; Dkt. No. 26-1.) As shown above, Progressive communicated with Andersen, directly and through counsel, on numerous occasions over the course of several months. While Andersen may have desired more frequent updates, "such conduct is not evidence of bad faith." *Smith v. Continental Cas. Co.*, No. 07-cv-1214, 2008 WL 4462120, at *15 (M.D. Pa. Sept 30, 2008), *aff'd*, 347 F. App'x 812 (3d Cir. 2009) (holding that a failure to contact the claimant prior to denial of coverage may not be best practice but was still not evidence of bad faith).

Andersen also claims that Progressive had "zero evidence" to support its denial of coverage. (Pl's. Resp. at 6; Dkt No. 26-1.) Again, the record evidence shows otherwise. Progressive gave many reasons for the coverage denial pursuant to the regular use exception. In July 2024, Andersen told Progressive he "was able to use [the 2004 Ford Ranger] when needed." (Claim Text Messages at 2; Dkt. No. 24-4.) Andersen acknowledged that he had his own set of keys for the vehicle, (Andersen Dep. At 82; Dkt. No. 24-5), that the vehicle had been kept overnight at his home, (*id.*), and

that he and his wife were in the process of purchasing the vehicle from his mother-in-law. (*Id.* at 80; Mercier Dep. at 91, Dkt. No. 24-5.) [1]

Andersen argues that Progressive was "indifferen[t] to the facts" and points to evidence in the record that he contends shows he may not have regularly used the vehicle, such as his statements that the vehicle was only driven occasionally, others in the family had access to it and he had no part in maintaining the vehicle. (Pl's. Resp. at 7–11; Dkt. No. 26-1.) But Progressive need not show its investigation "eliminated possibilities at odds with its conclusion." *Hamm v. Allstate Prop. & Cas. Ins. Co.*, 908 F. Supp. 2d 656, 670 (W.D. Pa. 2012) (citation omitted). Rather, Progressive must show that its review was "sufficiently thorough to yield a reasonable foundation for its action." *Id.* (citation omitted). Progressive's decision to deny Andersen's claims under the regular use exception did not even have to be correct, as a bad faith claim fails "where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." *Bostick v. ITT Hartford Grp. Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999). Nothing in the record could lead a jury to conclude that Progressive's decision was frivolous or unfounded and "[a] reasonable basis is all that is required to defeat a claim of bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004); *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 n.3 (E.D. Pa. 1998) (holding a defendant may prevail at summary judgment by "affirmatively demonstrating a reasonable basis for its actions").

---

[1] Vehicles are available for "regular use" when they are "readily obtainable [or] accessible" for use. *Campbell v. Travelers Home & Marine Ins. Co.*, 558 F. Supp. 3d 230, 238 (E.D. Pa. 2021) (citation omitted). Courts have found important indicia of the regular use exception to include "(1) blanket permission to use the car rather than having to request permission each time and (2) an available set of keys." *Nationwide Mut. Ins. Co. v. Shoemaker*, 965 F. Supp. 700, 706 (E.D. Pa. 1997), *aff'd*, 149 F.3d 1165 (3d Cir. 1998).

Even if Andersen had shown that Progressive lacked a reasonable basis, there is no evidence Progressive knew or recklessly disregarded its lack of one. The company's records show each step it took in investigating and making a decision on Andersen's claim. (*See* Progressive's Claim Notes; Dkt. No. 24-3.) Progressive attempted to schedule a recorded statement with Andersen on the use of the vehicle multiple times and he declined to cooperate before filing suit. (*Id.* at 40–41.) Eberle reviewed new information and evidence as it became available throughout the investigation. (*See* Progressive's Claim Notes; Dkt. No. 24-3.) Eberle's investigation was also reviewed along the way by supervisors. (*Id.* at 37, 40, 84.)

While not required for a finding of bad faith, plaintiffs can use evidence of a "dishonest purpose" or "ill will" to support a showing that an insurer knowingly or recklessly disregarded its lack of a reasonable basis for denying a claim. *Rancosky v. Washington Nat. Ins. Co.*, 130 A.3d 79, 92–93 (Pa. Super. Ct. 2015). There is no evidence in the record that would allow a reasonable jury to so find.

B

Lastly, Andersen claims that Progressive acted in bad faith during the Delaware County breach of contract litigation. (Am. Compl. ¶ 34(h).) But an insurer's litigation conduct can be used as evidence of bad faith "only when the conduct shows the insurer is intentionally avoiding its obligation under a policy or is undermining the truth-finding process." *Rocco v. Farmers Ins. Exch.*, No. 24-cv-209, 2025 WL 439431, at *1 (E.D. Pa. Feb. 7, 2025) (citations omitted). The conduct must reflect "the insurer in its capacity as an insurer" and "not as a legal adversary in a lawsuit filed against it by an insured." *See id.* (citations omitted).

Andersen points specifically to Progressive's filing of a motion for summary judgment, (Am. Compl. ¶ 34(h)), but that conduct would strictly fall under their conduct "as a legal adversary" and therefore "cannot be the basis for a statutory bad faith claim." *Phan-Kramer v. Am. States Ins. Co.*, No. 23-cv-1867, 2023 WL 4867421, at *4 (E.D. Pa. July 31, 2023).

Based on the record, no reasonable jury could find by clear and convincing evidence that Progressive acted in bad faith.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.